## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

DANTE BENJAMIN HAYWARD,

       Plaintiff,

   v.

AUSTIN VAN HOUTAN; and SETH
CUBBEDGE,

       Defendants.

CIVIL ACTION NO.: 4:19-cv-75

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Cubbedge and Van Houtan's Motion for

Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment.  Doc. 70.

Plaintiff filed a Response, and Defendants filed a Reply.  Docs. 76, 80.  At the request of the

Court, Plaintiff also filed a Surreply addressing the timeliness of his Response, to which

Defendants filed a Sur-Surreply.  Docs. 83, 84, 88.  For the following reasons, I

**RECOMMEND** the Court **DENY** Defendants' Motion for Judgment on the Pleadings and

**GRANT in part** and **DENY in part** Defendants' Motion for Summary Judgment.  Defendant

Van Houtan is entitled to summary judgment on Plaintiff's excessive force claim.  However, if

the Court adopts these recommendations, Plaintiff's excessive force claim against Defendant

Cubbedge in his individual capacity remain pending.

## PROCEDURAL HISTORY

Plaintiff brought this suit, asserting claims under 42 U.S.C. § 1983 for Defendants' use of

a taser while he was held as a pretrial detainee at Effingham County Jail, alleging the force used

violated his Eighth Amendment rights.  Doc. 1 at 5.  After conducting frivolity review, the Court

dismissed claims against Defendants Taser Company and John Doe 3, along with Plaintiff's claims for failure to protect and denial of adequate medical care. Doc. 10. However, the Court permitted Plaintiff to proceed with his claim for excessive force in violation of the Eighth Amendment against Defendants Cubbedge and Van Houtan.[1] Id.

After Defendants answered, Plaintiff filed a motion for leave to amend his Complaint. Doc. 23. Plaintiff's motion was granted in part and denied in part. Doc. 31. Plaintiff was permitted to amend his Complaint to assert his excessive force claims against Defendants under the Fourteenth Amendment, rather than the Eighth Amendment, because Plaintiff was a pretrial detainee at the time of the alleged incident.[2] Id. at 1–4. The Court did not require Plaintiff to submit an Amended Complaint, as the only permitted amendments involved which constitutional provision his claim was brought under and the names of the John Doe Defendants.

### UNDISPUTED MATERIAL FACTS[3]

Defendants submitted a Statement of Material Fact ("SMF") in support of their Motion for Summary Judgment, in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1. Doc. 70-1. Defendants' SMF relies on: Plaintiff's deposition; Effingham County

---

[1]    Plaintiff initially identified Defendants Cubbedge and Van Houtan as John Doe 1 and John Doe 2. However, these Defendants identified themselves when waiving service and filed an Answer to Plaintiff's Complaint. Docs. 13, 14, 16. Plaintiff also identified Defendants Cubbedge and Van Houtan as the John Doe Defendants in his motion to amend. Doc. 23.

[2]    During frivolity review, the Magistrate Judge conducting the review construed Plaintiff's claim as one for excessive force arising under the Eighth Amendment. Doc. 7 at 6. However, after frivolity review, Plaintiff informed the Court he was a pretrial detainee at the time of the alleged incident. Doc. 25 at 2 n.1. Pretrial detainees' claims for constitutional violations are asserted under the Fourteenth Amendment, not the Eighth Amendment. Telfair v. Gilberg, 868 F. Supp. 1396, 1403 (S.D. Ga. 1994) (citing Bell v. Wolfish, 441 U.S. 520, 535–36 n.16 (1978)).

[3]    The undersigned has determined which facts are undisputed, material, and supported by the record considering the parties' briefing. The recited facts represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

Sherriff's Use of Force Report; the declarations of Defendants Cubbedge and Van Houtan; Effingham County Jail's Incident Report; and photographs of Plaintiff's leg.  Docs. 70-3 to 70-8.

Plaintiff filed a Response in Opposition to the Motion for Summary Judgment, including his own SMF.  Docs 76, 76-2.  In support of his Response and SMF, Plaintiff relies on: his declaration,[4] his deposition; Defendants' interrogatory and discovery responses; Defendants' training history; Effingham County Sherriff's Response to Aggression Report; medical records; Effingham County Jail Incident Reports; Plaintiff's grievances; Defendant Cubbedge's disciplinary history; Defendants' declarations; Effingham County Jail's log; Effingham County Jail policies; standard operating procedures, operations manual, and mission statement for jail operation; Effingham County's Sheriff's Standard Operation Procedures; photographs of Plaintiff's leg; Plaintiff's inmate disciplinary report; and Georgia Department of Public Safety Policy Manual.  Docs. 76-3 to 76-22.

When considering the record at summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotations omitted) (quoting Tolan v. Cotton, 572 U.S. 651 (2014)).  In light of these circumstances, and after reviewing the parties' submissions, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment:

---

[4]     Defendants argue Plaintiff's declaration should be disregarded for purposes of summary judgment because it contradicts portions of his earlier deposition testimony.  Doc. 80 at 1–2.  Aside from a few scattered references in the brief, Defendants do not indicate which parts of his declaration contain contradictions.  While the Court notes some contradictions, see n.5 infra, Plaintiff's declaration is largely consistent with his prior testimony and other portions of the record.  Thus, the undersigned declines to disregard Plaintiff's entire declaration, which is attested to under the penalty of perjury; instead, only the material, contradicted portions will not be considered.  See 28 U.S.C. § 1746; Fed. R. Civ. P. 56(e); United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1444 (11th Cir. 1991).

At the time of the incident, Plaintiff was incarcerated at the Effingham County Jail as a pretrial detainee and Defendants were employees working at the Jail.  Doc. 70-1 at 2; Doc. 76-2 at 2.  On April 14, 2017, several detainees in a cell near Plaintiff's were attempting to remove one of their cellmates.  Doc. 70-2 at 2; Doc. 70-4 at 2–6; Doc. 76-2 at 3.  These other inmates were throwing bed mats and other property over the railing to expel their cellmate.  Doc. 70-1 at 2.  Plaintiff was housed in a single-person cell at this time because the other cells were full. Doc. 70-1 at 3; Doc. 76-2 at 3.

In order to regain control of the jail, officials determined they needed to move Plaintiff from his single-person cell into a multi-person cell so they could place one of the inmates involved in the disturbance in a single-person cell.  Doc. 70-1 at 3; Doc. 76-2 at 3.  Jail officials notified Plaintiff over the Jail's intercom system he needed to pack his belongings because he was moving to a different cell.  Doc. 70-1 at 3; Doc. 76-2 at 3.  Plaintiff responded he did not want to move and did not pack his belongings as instructed.  Doc. 70-1 at 3.

Because Plaintiff refused to comply with an official's orders over the intercom, Defendants Cubbedge and Van Houtan went to Plaintiff's cell to facilitate the move.  Id. Defendants again informed Plaintiff he needed to move into a multi-person cell.  Id.; Doc. 76-2 at 4.  At this point, Plaintiff told Defendants he would not move into a multi-person cell and he would only move to "the hole," which is an isolation cell used for disciplinary segregation. Doc. 70-1 at 3; Doc. 76-2 at 4.  Plaintiff did not explain to Defendants why he refused to move into the multi-person cell.[5]  Doc 70-1 at 4.

---

[5]      In Plaintiff's deposition, he plainly stated he never informed Defendants as to why he did not want to move cells because they did not ask.  Doc. 70-3 at 10.  However, Plaintiff now contradicts his previous sworn testimony in an declaration he submitted in opposition to Defendants' Motion for Summary Judgment, stating he told Defendants he did not feel safe moving to the cell because another inmate looked like someone with whom he had previously had an altercation.  Doc. 76-3 at 3.  Plaintiff offers no explanation for his change in testimony.  Consequently, because Plaintiff flatly contradicts his

Defendant Van Houtan then warned Plaintiff if he refused to voluntarily vacate his cell, Defendants would use force to remove him.  Doc. 70-1 at 4; Doc. 76-2 at 4.  Plaintiff still refused to comply; instead, he crossed his arms and stood in the middle of his cell.  Doc 70-1 at 4; Doc. 76-2 at 4.  At this point, Defendant Van Houtan advanced toward Plaintiff to handcuff him.  Doc. 70-1 at 4.

The parties disagree about the next events.  Defendants state Plaintiff refused to comply and continued to actively resist their efforts to handcuff him and move him to another cell.  Doc. 70-1 at 4.  Plaintiff, on the other hand, contends he began complying with Defendants' orders, turned around and put his hands up, and was allowing himself to be handcuffed just before Defendants tased him.  Doc. 76-3 at 4.  Both parties rely on declarations to support their versions of events.  Docs. 70-6, 70-6, 76-3.  Construing the facts in the light most favorable to the nonmoving party, as the Court must, it is assumed Plaintiff was complying with Defendants' orders and was allowing himself to be handcuffed when Defendants tased him.  Under these facts, Defendant Cubbedge deployed his taser to immobilize Plaintiff while Plaintiff was complying with Defendants' orders.  Doc 70-1 at 4.

Defendant Cubbedge deployed his taser in a way that resulted in the taser handset ejecting two prongs, which are connected to the handset by wires and designed to contact the target's body from a distance and immobilize him.  Id.; Doc. 76-2 at 5.  Both taser prongs connected with Plaintiff's leg.  Doc. 70-1 at 4; Doc. 76-2 at 6.  One of the wires connecting the taser handset device to the prongs in Plaintiff's leg became disconnected.  Doc. 70-1 at 4.  Defendant Cubbedge then put the taser handset device on Plaintiff's torso so a complete circuit

---

earlier testimony without explanation, this portion of his declaration will be disregarded.  <u>Faulk v. Volunteers of Am.</u>, 444 F. App'x 316, 318 (11th Cir. 2011) (citing <u>Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.</u>, 736 F.2d 656, 657 (11th Cir. 1984)).

could be established between the handset device and the other prong that was still lodged in Plaintiff's leg.  Id.  Defendant Cubbedge then completed one taser cycle, which lasts five seconds.  Id.  After being tased, Plaintiff fell to the ground.  Id. at 6.  Defendant Cubbedge then triggered a second cycle, also lasting five seconds.  Id.

Plaintiff complained of an injury to his leg where the taser prongs made contact.  Doc. 70-1 at 5; Doc. 76-2 at 6.  Those injuries consisted of some bleeding and two small puncture wounds to his skin where the taser prongs hit his leg.  Doc. 70-1 at 5; Doc. 76-2 at 6.  After being tased, Plaintiff requested medical attention.  Doc. 76-2 at 6.  At the time of the incident, there was no medical staff on site, so Defendants contacted off-site medical personnel.  Doc. 70-1 at 5; Doc, 76-2 at 6.  The off-site medical personnel advised Defendants to disinfect the area where the taser prongs punctured Plaintiff's leg and provide him with Band-Aids for the affected area.  Doc. 70-1 at 5; Doc. 76-2 at 7.  Defendants allowed Plaintiff to shower and clean his leg and then provided him with Band-Aids.  Doc. 70-1 at 5; Doc. 76-2 at 7.

## DISCUSSION

Defendants now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing Plaintiff failed to state a claim because he brought the claim under the wrong constitutional amendment.  Doc. 70-2 at 7–9.  Alternatively, Defendants argue they are entitled to summary judgment on Plaintiff's excessive force claims in their individual and official capacities.  Id. at 9–24.  Defendants also argue Plaintiff's Response should be disregarded as untimely, which I address first.  Doc. 80 at 2–4.

## I.     Plaintiff's Response Will Not Be Disregarded as Untimely

Defendants argue Plaintiff's Response to their Motion for Summary Judgment should be disregarded as untimely and their Motion should be treated as unopposed under Local Rule 7.5.

Doc. 80 at 3.  Defendants contend Plaintiff did not deliver his Response for mailing until July 9, 2021, which was after the July 2, 2021 deadline.  Id. at 3.

On September 23, 2021, the Court ordered Plaintiff to respond to Defendants' argument on the untimeliness of his Response, which he did.  Docs. 83, 84.  Plaintiff contends he delivered his Response to his counselor at Coffee Correctional Facility, where he is presently incarcerated, for mailing on July 1, 2021, along with his request for indigent postage.  Doc. 84 at 2.  At that point, Plaintiff states he no longer had control of his Response and it was the responsibility of his counselor to deliver his Response to the mailroom, which did not occur until July 9, 2021.  Id. Plaintiff also provides his "Request for Indigent Postage," (which shows he delivered it to prison staff at Coffee Correctional Facility on July 1, 2021, but the mail room did not receive his Response until July 9, 2021), as well as a Declaration attesting he delivered his Response on July 1, 2021.  Doc. 84-1 at 2, 4–5.  Thus, Plaintiff has shown he timely responded as he delivered his Response for mailing on July 1, 2021, before the deadline ran.  Daker v. Comm'r, Ga. Dep't of Corr., 820 F.3d 1278, 1286 (11th Cir. 2016) (quoting Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) ("Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.")).

In response to Plaintiff's Surreply, Defendants ultimately concede Plaintiff's Response was timely and should not be disregarded on this basis.  Doc. 88 at 4.  Accordingly, the Court finds Plaintiff's Response is timely and will consider it for purposes of deciding Defendants' pending Motion.[6]

---

[6]   Defendants also argue Plaintiff's Response should be disregarded because his brief exceeded the 26 pages permitted by the Court's Local Rules.  Doc. 80 at 3–4 (citing Local R. 7.1(a)).  Plaintiff's brief is 31 pages; however, Plaintiff is a prisoner and is only able to submit handwritten documents.  Doc. 76-1. Considering this, Plaintiff's 31-page handwritten brief is not so long as to warrant disregarding it.  Thus, I decline to disregard Plaintiff's brief for the purposes of summary judgment.

## II.     Defendants Are Not Entitled to Judgment on the Pleadings

### A.     Legal Standard

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotation omitted).  The court "accept[s] as true all material facts alleged in the non-moving party's pleadings, and [views] those facts in the light most favorable to the non-moving party." Id.  As a motion for judgment on the pleadings under 12(c) and a motion to dismiss under 12(b)(6) are almost identical in form and relief, courts apply the same legal standard in assessing both motions.  See Mobile Telecommunications Techs., LLC v. United Parcel Serv., Inc., 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016) ("The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6).") (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).

Under the Rule 12(b)(6) standard, the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits.  Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an

unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2) ).

Finally, the court affords a liberal construction to a pro se litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).  However, this liberal construction does not mean the court has a duty to re-write the complaint.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

**B.    Analysis**

Defendants argue they are entitled to judgment on the pleadings because Plaintiff's claims, as asserted in his Complaint, fail.  Doc. 70-2 at 7; Doc. 80 at 7.  Defendants acknowledge Plaintiff moved for leave to amend his Complaint to assert his excessive force claims under the Fourteenth Amendment rather than the Eighth Amendment, as he was a pretrial detainee at the time of incident, which the Court granted.  Doc. 70-2 at 8–9; Doc. 80 at 7.  However, since Plaintiff never filed an Amended Complaint, Defendants argue Plaintiff never brought his claims under the Fourteenth Amendment.  Doc. 70-2 at 8.  Defendants assert because Plaintiff's claims remain pending under the wrong constitutional amendment—the Eighth Amendment—they are entitled to judgment on the pleadings.  Id.

Defendants are correct Plaintiff never submitted an Amended Complaint after the Court granted him leave to amend his Complaint, but, under the circumstances of this case, Defendants

are not entitled to judgment on the pleadings.  First, Plaintiff never states in his initial Complaint the constitutional provision under which he intends to proceed.  Doc. 1 at 7.  Plaintiff simply alleges Defendants used excessive force.  Id.  The Magistrate Judge conducting frivolity review simply labelled Plaintiff's claim as one under Eighth Amendment in his Report and Recommendation.  See Doc. 7 at 6–7.  Thus, it does not appear Plaintiff pled under the wrong legal theory (i.e., the wrong constitutional amendment), as Plaintiff only stated he was bringing an excessive force claim.

Further, Plaintiff was not required to state the legal theory supporting his claim.  "A complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests."  Hamilton v. Allen-Bradley Co., 244 F.3d 819, 832 (11th Cir. 2001); Criswell v. Intellirisk Mgmt. Corp., 286 F. App'x 660, 664 (11th Cir. 2008).  This is especially true given the more liberal standard construction afforded to pro se litigants pleadings.  Haines, 404 U.S. at 520.  Defendants were clearly on notice Plaintiff asserted an excessive force claim against them, as evidenced by their Motion for Summary Judgment addressing the issue.

When the Court granted Plaintiff's motion for leave to amend—where the only changes permitted were asserting this excessive force claim under the Fourteenth Amendment and amending the name of the John Doe Defendants—the Court did not order Plaintiff to submit an Amended Complaint.[7]  See Doc. 31.  Instead, the Court considered Plaintiff's Complaint amended at that point and all parties proceeded as if his Complaint were effectively amended. Defendants make no argument the factual allegations in Plaintiff's Complaint fail to state a

---

[7]     Defendants consented to these amendments to Plaintiff's Complaint.  Doc. 25 at 1–2.

claim.  Similarly, Defendants do not argue Plaintiff violated Rule 8(a) or otherwise failed to state a claim for relief that is plausible on its face.

In sum, Plaintiff did not bring a claim under the wrong constitutional amendment in his Complaint, as he only labeled his claim as one for excessive force.  He was not required to state the specific constitutional provision that supported his claim, and the Court never required Plaintiff to submit an Amended Complaint.  Accordingly, I **RECOMMEND** the Court **DENY** Defendants' Motion for Judgment on the Pleadings.

## III.    Plaintiff's Arguments Unrelated to Defendants' Motion for Summary Judgment

Plaintiff devotes significant briefing to issues not properly before the Court.  Primarily, Plaintiff raises issues related to discovery and claims not pending before the Court in his Response.

Plaintiff complains he was not provided with video footage from the jail and the taser used in the incident despite Plaintiff's requests.  Doc. 76-1 at 7.  However, Defendant Cubbedge informed Plaintiff, to the best of his knowledge, no video of the incident existed.  Doc. 76-11 at 3–4.  Further, the Court has already addressed this issue in Plaintiff's motion for an order compelling discovery.  Doc. 58.  In that motion, Plaintiff requested the same video footage.  Id. at 1–2.  The Court denied Plaintiff's motion, as Defendants represented to the Court no video exists and the Court cannot compel Defendants to produce items they do not have.  Doc. 62 at 4– 5.  The fact Defendants did not produce a video of the incident has no bearing on whether they are entitled to summary judgment.

Plaintiff also makes arguments related to a failure to train claim, a Fourteenth Amendment due process claim, a claim related to his placement in administrative segregation, a negligent hiring or retention claim, and assertions related to the handling of his grievances.

Doc. 76-1 at 24–30.  But these claims are not before the Court.  Plaintiff was only permitted to proceed on his excessive force claims.  Plaintiff cannot amend his Complaint to in a response to a motion for summary judgment.  Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[A] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment" as "the proper procedure for plaintiffs to assert a new claim" at the summary judgment stage "is to amend the complaint in accordance with [Rule 15(a)].").  Thus, the Court will not address these issues any further.

**IV.    Summary Judgment**

Defendants argue they are entitled to summary judgment on Plaintiff's claims because the undisputed material facts show Defendants did not violate Plaintiff's Fourteenth Amendment rights.  Doc. 70-2 at 9.  For the reasons explained below, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Defendants' Motion for Summary Judgment.

**A.    Summary Judgment Standard**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).  As the Eleventh Circuit Court of Appeals has explained, "[t]he facts at the summary judgment stage are not necessarily the true, historical facts or what a jury may ultimately find.  Instead, the facts at this stage are what a reasonable jury could find from the evidence . . . viewed in the light most favorable to the non-moving party."  Johnson v. City of Miami Beach, No. 20-10834, 2021 WL 5414410, at *1 (11th Cir. Nov. 19, 2021).

**B.     Defendants Are Entitled to Summary Judgment for Claims Against Them in Their Official Capacities**

Defendants argue they are entitled to summary judgment on any claims brought against them in their official capacities.  Doc. 70-2 at 9–11.  Defendants Cubbedge and Van Houtan worked for the Sherriff at Effingham County Jail at the time of the incident.  Doc. 70-1 at 2.

Plaintiff argues he should be allowed to sue Defendants in their official capacities because they were not acting within the scope of their authority when they tased him; thus, they are stripped of Eleventh Amendment immunity.  Doc. 76-1 at 9–10.  Plaintiff is incorrect.

Plaintiff cannot sustain a § 1983 claim for monetary damages against Defendants in their official capacities.[8]  States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state agency or a state officer in their official capacity is "no different from a suit against the [s]tate itself," such defendants are immune from suit under § 1983.  Id. at 71.  Further, it is well-settled law sheriffs and members of the sheriff department acting in a law enforcement capacity are acting on behalf of the state.  See Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003); Grech v. Clayton County, 335 F.3d 1326, 1347 (11th Cir. 2003) ("[T]he sheriff acts on behalf of the State in his function as a law enforcement officer . . . .").  As this Court has recognized,

---

[8]     Plaintiff also argues Defendants are not entitled to summary judgment for claims against them in their official capacities because there is evidence of an unconstitutional policy or custom at the jail. Doc. 76-1 at 10–11.  However, Plaintiff has not previously brought a policy or custom claim and cannot amend his Complaint to do so in response to a motion for summary judgment.  Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[A] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment" as "the proper procedure for plaintiffs to assert a new claim" at the summary judgment stage "is to amend the complaint in accordance with [Rule 15(a)].").

> Since <u>Manders</u> was decided in 2003, the relevant Georgia law remains essentially unchanged.  Indeed, it is now 'insurmountable' that Georgia sheriffs act as arms of the state—not as county officials . . . .  In sum, <u>Manders</u> and its progeny dictate that where a sheriff and his deputies are performing their official and authorized duties as state actors . . . they are entitled to Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against them in their official capacities.

<u>Frederick v. Brown</u>, No. CV 113-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015)

(citing <u>Manders</u>, 338 F.3d at 1328; <u>Grech</u>, 335 F.3d at 1332–40; <u>Hall v. Fries</u>, No. 7:13-CV-105, 2014 WL 1389063, at *4–5 (M.D. Ga. Apr. 9, 2014); <u>Scott v. Mercier</u>, No. 5:06-CV-33, 2007 WL 2728440 (S.D. Ga. Sept. 14, 2007); and <u>Lewis v. Wilcox</u>, No. 3:06-cv-29, 2007 WL 3102189, at *8 (M.D. Ga. Oct. 23, 2007)).

Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Effingham County Sherriff's Department at Effingham County Jail.  Accordingly, the Eleventh Amendment immunizes Defendants from suit for monetary damages in their official capacities.  Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief.  Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment for all claims for monetary damages against Defendants in their official capacities under § 1983.[9]

### C.    Defendants Are Not Entitled to Qualified Immunity for Individual Capacity Claims

Defendants argue qualified immunity bars Plaintiff's excessive force claims against them in their individual capacities.  Doc. 70-2 at 14–24.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate

---

[9]    I decline to address Defendants' arguments about whether they would be entitled to summary judgment for policy or custom claims asserted against them in their official capacities because there are no claims for an unconstitutional policy or custom currently pending.  Doc. 70-2 at 10–14.

clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity protects "all but the plainly incompetent or one who is knowingly violating the federal law."  Carter v. Butts County, 821 F.3d 1310, 1319 (11th Cir. 2016).

Further, § 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation."  Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)).  Thus, each defendant is entitled to an independent qualified-immunity analysis, which considers "only the actions and omissions in which that particular defendant engaged."  Id.; see Norris v. Williams, 776 F. App'x 619, 622 (11th Cir. 2019) (explaining a district court improperly "assumed that each [d]efendant participated in each alleged action" and did not consider individual actions).

To establish the affirmative defense of qualified immunity, the defendant must first show he acted within the scope of his discretionary authority when the wrongful acts occurred.  Id. Once the defendant establishes he acted within his discretionary authority, the burden shifts to plaintiff to show qualified immunity is inappropriate.  Id.  To satisfy his burden of proving qualified immunity is inapplicable, the plaintiff must show (1) defendant violated a constitutional right, and (2) the right was clearly established at the time of the constitutional violation. Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010) (citing Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

### 1.   *Defendants were acting within their discretionary authority.*

Here, Defendants Van Houtan and Cubbedge were plainly acting within their discretionary authority.  Discretionary authority includes all actions of a governmental official that "(1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority."  Dang ex rel. Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1279 (11th Cir. 2017) (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)); Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013).  Defendants worked as correctional officers at Effingham County Jail and assert they were performing their duties and acting within their discretionary authority when determining where to place Plaintiff in that facility.  See Doc. 70-5 at 2; Doc. 70-6 at 2.  Consequently, no genuine dispute of material fact exists regarding whether Defendants were exercising their discretionary authority when deciding where to jail Plaintiff.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (discussing evaluation of discretionary authority for qualified immunity purposes); White v. Procter, No. 2:18-cv-71, 2020 WL 8115880, at *5 (S.D. Ga. Dec. 15, 2020) (explaining jail officials act within their discretionary authority when deciding where to house inmates) (citing Youngs v. Johnson, No. 4:06-CV-19, 2008 WL 4816731, at *12, (M.D. Ga. Oct. 30, 2008)).

### 2.   *A genuine question of material fact exists as to whether Defendant Cubbedge used excessive force.*

In the Eleventh Circuit, the Fourteenth Amendment excessive force analysis tracks the Fourth Amendment's "objective-reasonableness" standard.[10]  Crocker v. Beatty, 995 F.3d 1232,

---

[10]      In Kingsley v. Hendrickson, the United States Supreme Court held that for Fourteenth Amendment excessive force claims, "the relevant standard is objective not subjective."  576 U.S. 389, 395 (2015).  The Supreme Court further explained, "[T]he appropriate standard for a pretrial detainee's excessive force claim is solely an objective one."  Id. at 397; see also Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 70 (1st Cir. 2016) ("[T]he Supreme Court has held that the appropriate standard for a pretrial detainee's Fourteenth Amendment excessive force claim is simply objective reasonableness."); Patel v. Lanier County, 969 F.3d 1173, 1182 (11th Cir. 2020) ("[I]nasmuch as it entails an inquiry into the

1248 (11th Cir. 2021) (citing <u>Patel v. Lanier County</u>, 969 F.3d 1173, 1181–82 (11th Cir. 2020));

<u>see also</u> <u>Piazza v. Jefferson County</u>, 923 F.3d 947, 952 (11th Cir. 2019) (reading <u>Kingsley</u> to

require an objective-reasonableness inquiry akin to Fourth Amendment excessive-force

analysis).  In analyzing whether the use of force was objectively reasonable under the Fourth

Amendment, the Court must consider: "(1) the need for the application of force, (2) the

relationship between the need and amount of force used, and (3) the extent of the injury

inflicted."  <u>Stephens v. DeGiovanni</u>, 852 F.3d, 1298, 1324 (11th Cir. 2017) (internal quotations

omitted).  This "fact-specific inquiry takes into account facts as they reasonably appeared to the

[officer]."  <u>Williams v. Deal</u>, 659 F. App'x 580, 597–98 (11th Cir. 2016).  Indeed, "[i]f an officer

reasonably, but mistakenly, believes that one of the factors relevant to the merits of the

constitutional excessive-force claim is present, the officer is justified in using more force than in

fact was needed."  <u>Id.</u>

 The undisputed material facts show Plaintiff at least initially refused to comply with

multiple orders from several jail officials to leave his cell.  Indeed, Plaintiff acknowledges he

was initially non-compliant.  Doc. 76-1 at 19.  However, there is genuine dispute of material fact

as to when Plaintiff began complying with Defendants in relation to Defendant Cubbedge's

application of force—the tasing.

 Defendants argue Plaintiff never complied with orders and resisted efforts to be

handcuffed, necessitating the need for the use of force.  Doc. 70-1 at 4.  On the other hand,

Plaintiff contends, as soon as Defendant Van Houtan entered his cell and began to approach him,

he turned his back to Defendants, faced the wall, and put his hands up to surrender.  Doc. 76-2 at

---

objective reasonableness of the officers' actions, . . . the Fourteenth Amendment standard has come to
resemble the test that governs excessive-force claims brought by arrestees under the Fourth
Amendment.").

5; Doc. 76-3 at 4; Doc. 76-4 at 13.  Then, Defendant Van Houtan began to handcuff Plaintiff, which Plaintiff did not resist in any way.  Doc. 76-2 at 5; Doc. 76-3 at 4.  However, before Defendant Van Houtan could finish handcuffing Plaintiff and while his back was turned, Defendant Cubbedge tased Plaintiff.  Doc. 76-2 at 5–6; Doc. 76-3 at 4.  Once Plaintiff fell to the ground, Defendant Cubbedge tased Plaintiff a second time.  Doc. 70-1 at 6.  Again, the parties dispute whether Plaintiff was continuing to resist Defendants when he was tased for a second time.  Compare Doc. 70-1 at 6 with Doc. 76-2 at 6; Doc. 76-3 at 4.[11]

Where an inmate refuses to move to a cell and remains non-compliant, the use of force is justified.  Brown v. Smith, 813 F.2d 1187, 1189–90 (11th Cir. 1987); see also Alday v. Groover, No. CV 212-108, 2014 WL 1320093, at *6 (S.D. Ga. Mar. 31, 2014) (noting plaintiff failed to follow officer's lawful commands and an "official need not wait until disturbances are dangerous before using force to restore order.") (citing Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)); Miles v. Jackson, 757 F. App'x 828, 830 (11th Cir. 2018) (finding a need for force where the inmate failed to comply with an officer's orders to go further into a cell and evaded attempts at compliance); Riggins v. Beseler, 568 F. App'x 850, 853 (11th Cir. 2014) (holding officers had a legitimate need to use a stun gun against an inmate where he refused to comply with several orders); Howell v. Houston County, No. 5:09-cv-402, 2011 WL 3813291 at *20 (M.D. Ga. Aug. 26, 2011) (finding use of a taser reasonable where a pretrial detainee refused to comply with orders to remove his shorts and continually threatened officers).

However, where a correctional officer uses force, such as a taser, once a pretrial detainee complies with orders, the use of force is objectively unreasonable.  Coffman v. Battle, 786 F.

---

[11]     A jury may not believe Plaintiff's evidence, including his sworn testimony, and may find the evidence proffered by Defendants more credible, but this Court may not make that sort of credibility determination at this stage.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

App'x 926, 930–31 (11th Cir. 2019); see also Piazza, 923 F.3d at 954 ("[I]f force used against a pretrial detainee is more severe than is necessary to subdue him or otherwise achieve a permissible governmental objective, it . . . is therefore unconstitutional."); Skelly v. Okaloosa Cnty. Bd. of Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (holding "gratuitous use of tasers on a handcuffed and compliant pretrial detainee constitutes a violation of the Fourteenth Amendment's prohibition on the use of excessive force").  This is true even where the pretrial detainee was previously non-compliant.  Coffman, 786 F. App'x at 931.  Thus, a genuine issue of material fact exists as to whether the use of taser by Defendant Cubbedge was objectively reasonable.

Likewise, there is a genuine issue of material fact on the relationship between the need for force and the force applied.  As explained above, it is unclear whether Plaintiff was complying with being handcuffed when he was tased.  The use of force by Defendant Cubbedge was two taser shots, in quick succession.  Here, taking Plaintiff's version of facts as true, he was complying or attempting to comply with Defendants by surrendering and allowing himself to be handcuffed when they tased him.  Glasscox v. City of Argo, 903 F.3d 1207, 1213–15 (11th Cir. 2018) (finding a constitutional violation where plaintiff did nothing that could "reasonably be viewed as resistance"); Piazza, 923 F.3d at 953 ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need.") (citation omitted); Wheat v. Day, 859 F. App'x 885, 887 (11th Cir. 2021) (finding no use of force necessary where the prisoner's back was to his cell and the correctional officer was unprovoked).  That is, where a pretrial detainee is complying or attempting to comply, tasing is not a proportional response.

While the final factor—the extent of Plaintiff's injuries—weights in Defendants' favor, summary judgment is still not appropriate.  The undisputed material facts show Plaintiff, as a result of being tased, had two small puncture wounds on his leg, requiring only a Band-Aid.  Doc. 70-1 at 5; Doc. 76-2 at 6.  Plaintiff alleges he now suffers from nerve damage because of being tased, but he offers nothing other than his own self-serving statement.  An inmate must do more than provide his own conclusory allegations of injury and uncorroborated affidavits to show his injuries were more than *de minimis*.  See Riggins, 568 F. App'x at 853 (finding a plaintiff had not shown excessive force because "[o]than [the plaintiff's] self-serving statement . . . , he failed to submit any evidence that his injuries were more than de minimis."); Bennett v. Parker, 898 F.2d 1530, 1533–34 (11th Cir. 1990) ("[The plaintiff's] claim of serious injury is only a conclusory allegation, unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses, and we therefore discount it."); Brown, 813 F.2d at 1189 ("Since [the plaintiff's] affidavit includes only a most conclusory allegation that his injury was serious, we discount his conclusion . . . .").

Plaintiff's puncture wounds and minimal bleeding requiring only a Band-Aid is such an insignificant injury it weighs against the jury finding for Plaintiff on the "core judicial inquiry" of whether "the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'"  Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (ellipsis in original) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  Accordingly, this factor cuts in Defendants' favor.  However, the extent of Plaintiff's injuries is not a dispositive factor.  Instead, resulting injuries are merely an indicator of excessive force, but courts are ultimately required to focus on "nature of the force applied."  Patel, 969 F.3d at 1184 (citing Wilkins, 559 U.S. at 34).  That is, "a lack of significant injury" does not mean "the force used was

reasonable." <u>Crocker</u>, 995 F.3d at 1251, n.17; <u>see also</u> <u>Gomez v. United States</u>, 601 F. App'x 841, 850 (11th Cir. 2015) (holding an officer used excessive force even where the arrestee had no visible or compensable injury).  Further, where only the extent of the injury weighs in a defendant's favor, defendants are typically not entitled to summary judgment on a plaintiff's excessive force claim.  <u>Wheat</u>, 859 F. App'x at 887.

To the extent Defendants argue Plaintiff's claims fail because he alleges the taser *malfunction* caused his injury, rather than the *use* of taser, their argument is unpersuasive. Doc. 70-2 at 22 n.12; Doc. 80 at 13.  The undisputed material facts show the taser malfunctioning required Defendant Cubbedge to press the taser against Plaintiff's skin to complete the circuit.  Doc. 70-1 at 4.  The taser, correctly functioning or otherwise, does not change the analysis as to whether the use of force was excessive or justified.  Moreover, even if a purported taser malfunction did cause additional or more severe injuries, the extent of Plaintiff's injuries is merely an indicator of force, as explained.  Thus, the taser's purported malfunctioning does not change whether Defendant Cubbedge was permitted to use such force, and it does not change the injuries substantiated in the record.

In sum, even though one factor weighs in Defendants' favor, a genuine issue of material fact exists as to whether Defendant Cubbedge violated Plaintiff's Fourteenth Amendment rights. Ultimately, it is for the jury to determine whether the officers' use of force was excessive and to the extent the jury finds the officers used excessive force, the jury should determine appropriate damages.  Therefore, nothing in this Report should be read to adjudicate whether Plaintiff's rights were violated or the extend of damages incurred.

### 4. *Defendant Cubbedge violated clearly established law.*

Defendants argue they are entitled to qualified immunity because Plaintiff cannot establish they violated a clearly established right. Doc. 70 at 22. However, when viewing the facts in the light most favorable to Plaintiff—that Plaintiff had surrendered and was complying with being handcuffed when Defendant Cubbedge tased him—Defendants are incorrect.

The law is clearly established when a reasonable officer would have "fair warning" his conduct would violate a constitutional or statutory right. Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011). Further, "the rule requiring particularized case law to establish clearly the law in excessive force cases has [a] narrow exception, known as the 'obvious clarity rule.'" Glasscox v. City of Argo, 903 F.3d 1207, 1218 (11th Cir. 2018) (citing Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000), and Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009)) (some internal quotations omitted). "Under this rule, 'an excessive-force plaintiff can overcome qualified immunity only by showing that the official's conduct lies so obviously at the very core of what the [constitution] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw on point." Id. (citing Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997)).

As the Eleventh Circuit Court of Appeals recently explained, "[F]or decades our decisions have embraced and reiterated the principle that an officer may not continue to use force after a detainee has clearly stopped resisting." Wheat, 859 F. App'x at 887 (quoting Piazza, 923 F.3d at 955) (citing Danley v. Allen, 540 F.3d 1298, 1309 (11th Cir. 2008), *abrogated on other grounds by* Kingsley, 576 U.S. 389; Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008); and Fils v. City of Aventura, 647 F.3d 1272, 1288–90 (11th Cir. 2011)); see also Johnson, 2021 WL 5414410, at *4 ("This Court has ruled specifically that a police officer violates the Fourth

Amendment if he uses gratuitous force against a suspect who is secure, not resisting, and not a safety threat to the officer or other officers."). Thus, Defendants were on notice their alleged conduct—tasing a surrendering, non-resistant pretrial detainee—violated the Fourteenth Amendment. Accordingly, I **RECOMMEND** the Court **DENY** the portion of Defendants' Motion for Summary Judgment related to Plaintiff's excessive force claims against Defendant Cubbedge in his individual capacity.

### 5.  *Defendant Van Houtan did not violate Plaintiff's constitutional rights.*

While Plaintiff contends Defendant Cubbedge's use of a taser amounted to excessive force, the undisputed material fact show Defendant Van Houtan's involvement is limited to Van Houtan trying to handcuff Plaintiff. Doc. 70-3 at 4. Plaintiff contends Defendant Van Houtan started to handcuff him by trying to grab his arm, id., but he does not allege this was excessive or caused any injury. Brown v. City of Huntsville, 608 F.3d 724, 740 (11th Cir. 2010) (collecting cases and explaining the use of some force, including handcuffs, is *de minimis* and does not constitute excessive force); Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) (finding no excessive force where an officer "grabbed [plaintiff] by the arm, forced him to the ground, placed him in handcuffs, and searched him"). Indeed, the Supreme Court has specified "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 559 U.S. at 34. Thus, the undisputed material facts show Defendant Van Houtan did nothing more than attempt to handcuff Plaintiff, which does not amount to excessive force. Accordingly, I **RECOMMEND** the Court **GRANT** the portion of Defendants' Motion for Summary Judgment related to Plaintiff's excessive force claims against Defendant Van Houtan in his individual capacity.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **DENY** Defendants' Motion for Judgment on the Pleadings and **GRANT in part** and **DENY in part** Defendants' Motion for Summary Judgment.  Defendant Van Houtan is entitled to summary judgment on Plaintiff's excessive force claim.  However, if the Court adopts these recommendations, Plaintiff's excessive force claim against Defendant Cubbedge in his individual capacity remain pending.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 1st day of December, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA